# In the United States Court of Federal Claims

### No. 12-142C
### (Filed: February 5, 2015)

```
* * * * * * * * * * * * * * * * * * * * * * * * *   *
                                                    *
QUIMBA SOFTWARE, INC.,                              *
                                                    *
                            Plaintiff,              *
                                                    *
            v.                                      *
                                                    *
THE UNITED STATES,                                  *
                                                    *
                            Defendant,              *
                                                    *
* * * * * * * * * * * * * * * * * * * * * * * *   *
```

Motion to Dismiss; Government Counterclaim; Contract Disputes Act; Subject Matter Jurisdiction; Scope of Contracting Officer Final Decision.

William T. Welch, McMahon, Welch, and Learned, 2100 Reston Parkway, Suite 325, Reston, VA 20191, for Plaintiff.

Joyce R. Branda, Robert E. Kirschman, Jr., Reginald T. Blades, Jr., P. Davis Oliver, Department of Justice, Civil Division, Commercial Litigation Branch, Ben Franklin Station, Washington, D.C. 20044, for Defendant.

_____

### OPINION AND ORDER DENYING MOTION TO DISMISS COUNTERCLAIM
_____

This matter comes before the Court on Plaintiff's motion to dismiss Defendant's counterclaim. Plaintiff, Quimba Software, Inc. ("Quimba"), appeals the Contracting Officer's Final Decision, which demanded repayment of $91,992.77 in unallowable costs incurred in Fiscal Year ("FY") 2004. In its counterclaim, the Government corrected the Contracting Officer's calculation error and reduced the amount to $76,481.55. Plaintiff argues that this Court lacks jurisdiction over Defendant's counterclaim because the counterclaim is a "new claim, not previously considered by the Contracting Officer." Mot. to Dismiss 1. Plaintiff argues that the counterclaim includes payments made to Quimba in FY 2005, for costs Quimba incurred in FY 2004, which Plaintiff asserts were not considered by the Contracting Officer. Id. at 4-5, 8.

The Court denies the motion because Defendant's counterclaim is within the scope of the Contracting Officer's Final Decision, arises from the same set of operative facts as the Government claim, and because the Contracting Officer considered the matters raised in the counterclaim in his final decision.

## Background

On July 10, 2003, the Air Force Research Laboratory, Air Force Material Command of the United States Air Force ("Agency") entered into contract number F30602-03-C-0185 with Quimba for a cost-plus fixed-fee contract, with a ceiling of $199,950.00. Compl. ¶ 3.  The contract provided that invoices or vouchers "shall be submitted to the cognizant Defense Contract Audit Agency ("DCAA") office" and the Government will reimburse "properly allocable and allowable indirect costs . . . ." A10, A12 (incorporating FAR 52.216-7).[1]

In February 2004, DCAA approved one payment of $30,321.77 for costs Quimba incurred in FY 2003. Compl. ¶ 18. Throughout 2004, Quimba remained in ongoing discussions with DCAA auditors and the Agency's contracting staff regarding its indirect rates and deferment of salaries for its founders, due to a lack of funds. Id. at ¶¶ 18-31.  Quimba argued that the Government's failure to pay contract funds prevented Quimba from paying its founders in 2004, for their 2004 work. Id. at ¶ 50; Reply 3.

In March 2005, Quimba completed work on the contract. On July 29, 2005, Quimba submitted its final 2004 Incurred Cost Proposal ("ICP"). Mot. to Dismiss, Ex. 3 at 1.  "All of Quimba's submitted invoices were paid in 2005," which included the claimed founders' deferred compensation costs from 2004.  Compl. ¶ 43.

In May 2007, DCAA initiated an audit of Quimba's 2004 ICP, and on July 20, 2007, issued an audit report. Id. at ¶ 46.  This audit report questioned $148,684 of the $211,963 costs claimed by Quimba in FY 2004.  Mot. to Dismiss, Ex. 3 at 1.  The auditors questioned $61,124 of direct labor costs, invoking FAR 31.205-6(a)(6)(iii).  This FAR provision states that, "[f]or owners of closely held companies, compensation in excess of the costs that are deductible as compensation under the Internal Revenue Code . . . is unallowable."  The auditors' "examination disclosed that wages paid and deducted as compensation under IRS regulations to the two owners [were] significantly less than direct labor claimed on the government contract." Id. at 3.

On November 8, 2010, Contracting Officer Craig M. Studley issued a notice of intent to disallow $148,684 in claimed FY 2004 costs based on DCAA's May 2007 audit report.  A22. The Contracting Officer acknowledged that the auditors incorrectly cited FAR 31.205-6(a)(6)(iii) as the basis for questioning the deferred compensation and that the correct citation was FAR 31.205-6(b)(2)(i) because the latter was in effect during the life of the contract. A22.  FAR 31.205-6(b)(2)(i) states: "for closely held corporations, compensation costs . . . shall not be recognized in amounts exceeding those costs that are deductible as compensation under the Internal Revenue code and regulations under it." Id.  (alteration in original).  The Contracting Officer noted that for FY 2004, the owners each reported $52,000 for their salaries on their W-2s submitted to the IRS -- less than the $148,684 each claimed as reimbursement for their salaries under the contract. A22-A23.

---

[1]    Citations to "A" denote pages in the appendix attached to Defendant's response to Plaintiff's motion to dismiss the counterclaim.

2

The Contracting Officer also addressed Quimba's arguments that FAR 31.205-6(k) allowed deferred compensation for the founders to be included in incurred cost claims. He stated:

> FAR 205-6(k) explains the costs of deferred compensation awards are allowable provided the costs are measurable and allocated in accordance with 48 CFR 9904-50(b): 48 CFR 9904.415-50(b) states: 'if any of the conditions in 9904.415-50(a) is not met, the cost of deferred compensation shall be assignable only to the cost accounting period or periods in which the compensation is paid to the employee'; and 48 CFR 9904.415-50(a) states 'the contractor shall be deemed to have incurred an obligation for the cost of deferred compensation when <u>all</u> of the following conditions have been met: (1) There is a requirement to make the payment(s) which the contractor cannot unilaterally avoid; (2) The deferred compensation award is to be satisfied by a future payment of money, other assets, or shares of stock of the contractor; (3) The amount of the future payment can be measured with reasonable accuracy; (4) The recipient of the award is known; (5) If the terms of the award require that certain events occur before an employee is entitled to receive the benefits, there is a reasonable probability that such events will occur; and (6) for stock options, there must be a reasonable probability that the options ultimately will be exercised.

A23. (alteration in original).   The Contracting Officer interpreted FAR 31.205-6(b)(2)(i) combined with the above requirements to preclude deferred compensation for closely held companies "except in the year in which the compensation is paid." <u>Id.</u> Because Quimba's founders had a verbal agreement to pay themselves deferred compensation without specifying the timing or amount of payments, the Contracting Officer determined that Quimba did not meet the criteria of FAR 31.205-6(k).

On March 4, 2011, the Contracting Officer issued his Final Decision and denied the deferred compensation claimed in FY 2004, in excess of the amounts that were deductible on Quimba's 2004 taxes.   A24.   The Contracting Officer stated that "[d]uring FY 2004, the Government paid Quimba $155,271.77 for costs incurred . . . . Therefore Quimba was overpaid $91,992.77 ($155,271.77 - $63,279.00)."   A25.  The Final Decision demanded payment from Quimba of $91,992.77.  A26.  However, as admitted by the Government, this figure is incorrect. In response to Quimba's requests for admission, the Government admitted that Quimba was paid $30,321.77 during 2004, for costs incurred in 2003, and was paid $146,748.74 in 2005, for costs incurred in 2004.  Mot. to Dismiss, Ex. 2 at 2. The Government also admitted that it did not pay Quimba $155,271.77 in 2004, and that Quimba "was overpaid an amount other than $91,992.77." <u>Id.</u> at 3.[2]

---

[2]     In a Declaration attached to the Government's response to Quimba's motion to dismiss the counterclaim, the Contracting Officer asserts that he used a disbursement history report to identify what the Government had paid to Quimba for 2004 incurred costs, but this report did not represent the actual amount paid to Quimba for costs that Quimba incurred in 2004. A32-33.

On March 1, 2012, Quimba filed suit in this Court appealing the Contracting Officer's Final Decision.  In its counterclaim, the Government alleges that Quimba was overpaid for labor costs incurred in FY 2004 because $76,481.55 was unallowable as deferred compensation, citing FAR 31.205-6(b)(2)(i) (2003).

## Discussion

Quimba moves to dismiss the Government's counterclaim for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).  Subject-matter jurisdiction must be established before the Court may proceed to merits.  Aerolineas Argentinas v. United States, 77 F.3d 1564, 1572 (Fed. Cir. 1996).  If the Court determines that it does not have subject-matter jurisdiction over the claim, the Court must dismiss the action.  Adair v. United States, 497 F.3d 1244, 1251 (Fed. Cir. 2007).  When deciding a motion to dismiss pursuant to Rule 12(b)(1), this Court must assume that all well-pleaded facts in the pleading are true and draw all reasonable inferences in the non-movant's favor.  Pennington Seed, Inc. v. Produce Exch. No. 299, 457 F.3d 1334, 1338 (Fed. Cir. 2006).  The non-movant bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (1988). Furthermore, "the court may consider all relevant evidence in order to resolve the factual dispute, including evidentiary matter outside the pleadings . . . ." Wilson v. United States, 58 Fed. Cl. 760, 762 (2003) (citing Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985)); Schultz v. United States, 92 Fed. Cl. 213, 218 (2010).

The Tucker Act grants this Court jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). The Tucker Act further provides that the Court of Federal Claims "shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41 [the Contract Disputes Act] . . . on which a decision of the contracting officer has been issued under section 6 of that Act." Id. § 1491(a)(2).

The CDA outlines the jurisdictional requirements for bringing a dispute before this Court. 41 U.S.C. § 7104 (2012). The Government can bring a claim against a contractor by issuing a written decision by a Contracting Officer.  Id. § 7103(a)(3) ("Each claim by the Federal Government against a contractor relating to a contract shall be the subject of a written decision by the contracting officer.").  The Contracting Officer's decision shall state the reasons for the decision reached and shall inform the contractor of the contractor's rights. Id. § 7103(e).  In the contents of the decision, "[s]pecific findings of fact are not required. If made, specific findings of fact are not binding in any subsequent proceeding."  Id.  Once a Contracting Officer issues a final decision, the contractor has the option to appeal the decision to the appropriate agency board or the Court of Federal Claims. Id. § 7104.

## The Court Has Subject-Matter Jurisdiction Over Defendant's Counterclaim

Quimba argues that the Government's counterclaim should be dismissed because "it includes matters that the [G]overnment has admitted were not before the [C]ontracting [O]fficer

4

at the time he made his final decision."  Mot. to Dismiss 4. Quimba also argues that the counterclaim "introduces significant new issues about the method of calculation and allocation of costs, calculation of payments made, [and] new methods for determining the allocation and allowability of costs . . . ." Id.  Quimba argues that the Government is attempting to bring in payments made to Quimba in FY 2005, which were not considered by the Contracting Officer because the Contracting Officer based his Final Decision on the audit and Quimba's FY 2004 ICP, which did not consider any FY 2005 payments.  Quimba contends that the Government is trying to introduce "FY 2005 transactions" not considered by the Contracting Officer.  Id.

In response, the Government argues that its counterclaim and the Contracting Officer's Final Decision are premised on the same operative facts, namely that Quimba's deferred compensation costs in its 2004 ICP were unallowable under the FAR.  The Government contends that regardless of when the payments were actually made, its counterclaim and the Contracting Officer's Final Decision reference the same payments that the Government made for the same set of incurred costs.  Opp'n 12.

The Court's jurisdiction is limited to claims that are the subject of the Contracting Officer's final decision being appealed.  See Armour of Am. v. United States, 69 Fed. Cl. 587, 590 (2006). A claim before the Court of Federal Claims under the CDA must be "based on the same claim previously presented to and denied by the contracting officer."  Scott Timber Co. v. United States, 333 F.3d 1358, 1365 (Fed. Cir. 2003) (internal citations omitted).  Thus, a party "may not present a claim to this court that was not first presented to the contracting officer for a final decision."  Modeer v. United States, 68 Fed. Cl. 131, 137 (2005).  "If the court will have to review the same or related evidence to make its decision, then only one claim exists," but if the claim presented to the contracting officer requires examination of "a different or unrelated set of operative facts," then the claims are separate. Affiliated Constr. Grp, Inc. v. United States, 115 Fed. Cl. 607, 612 (2014) (quoting Kinetic Builder's, Inc. v. Peters, 226 F.3d 1307, 1312 (Fed. Cir. 2000) (internal quotations omitted)). "When the claims differ in the underlying factual basis for relief, and when the claims require different kinds of proof, they are different claims for purposes of the CDA." Id. (citing Placeway Constr. Corp. v. United States, 920 F.2d 903, 909 (Fed. Cir. 1990); AAB Joint Venture v. United States, 75 Fed. Cl. 414, 422-23 (2007)).

The Federal Circuit has made clear that this standard "does not require rigid adherence to the exact language or structure of the original administrative CDA claim." Scott, 333 F.3d at 1365.  In Scott Timber Co. v. United States, the Federal Circuit recognized that because Scott had given the Contracting Officer notice of its claim for breach of contract and sought the same relief from the Court of Federal Claims as it did from the Contracting Officer, it was not making a new claim.  333 F.3d 1358, 1365 (Fed. Cir. 2003).  Similarly, the Government's claim in the Contracting Officer's Final Decision and the relief sought by the Government in its counterclaim are substantively the same. The Contracting Officer demanded the return of allegedly unallowable Government payments to Quimba for its FY 2004 incurred costs based on FAR 31.205-6(b)(2)(i) (2003), on the theory, put forward by DCAA auditors, that Quimba had been paid more than the founders reported as compensation for that year to the IRS.  In the counterclaim, the Government also demands a return of these same allegedly unallowable costs incurred in FY 2004, based upon the founders' reporting of their compensation to the IRS in 2004.

The only factual difference between the Contracting Officer's Final Decision and the counterclaim is the amount sought and the elimination from the counterclaim of the Contracting Officer erroneous assertion that Quimba was paid in 2004 for its costs incurred in FY 2004.  The fact that Defendant in its counterclaim is seeking a lesser amount due to an error by the Contracting Officer does not convert the claim to a "new claim" or require that the Contracting Officer redo his decision on the Government's claim.  Both the counterclaim and the Contracting Officer's Final Decision center on what Quimba claimed as its FY 2004 incurred costs and their allowability under the FAR.

The Contracting Officer had a full opportunity to consider the Government's claim for overpayment of deferred compensation for FY 2004, and he did so. It would be inefficient and wasteful to dismiss the counterclaim where the substance of the underlying Government claim in the Contracting Officer's Final Decision is identical to that in the Government's counterclaim, and any errors in quantum can be fully aired in the course of the Court's de novo review.

### Conclusion

Plaintiff's motion to dismiss Defendant's counterclaim is **DENIED.**


s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**